MARILYN E, BEDNARSKI (No. 105322)
mbednarski@kmbllaw.com
DAVID S. McLANE (No.124952)
dmclane@kmbllaw.com
CAITLIN S. WEISBERG (No. 262779)
cweisberg@kmbllaw.com
KAYE, McLANE, BEDNARSKI & LITT, LLP
234 East Colorado Boulevard, Suite 230
Pasadena, California 91101
T: (626) 844-7660 / F: (626) 844-7670

Attorneys for Plaintiff OBIE STEVEN ANTHONY, III.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| REGGIE D. COLE,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CITY OF LOS ANGELES et al.,<br><br>　　　　Defendants. | Case No. CV 11-03241-CBM (AJWx)<br>[*Cole Action*]<br><br>Case No. CV 12-01332-CBM (AJWx)<br>[*Anthony City Action*]<br><br>Case No. CV 13-07224-CBM (AJWx)<br>[*Anthony County Action*] |
| OBIE S. ANTHONY, III,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CITY OF LOS ANGELES et al.,<br><br>　　　　Defendants. | [Honorable Consuelo B. Marshall]<br><br>**PLAINTIFF ANTHONY'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT AND/OR SUMMARY ADJUDICATION OF ISSUES AGAINST DEFENDANTS COUNTY OF LOS ANGELES AND LOS ANGELES COUNTY DISTRICT ATTORNEY'S OFFICE** |
| OBIE S. ANTHONY, III,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>COUNTY OF LOS ANGELES, et al.,<br><br>　　　　Defendants. | Date:　January 13, 2015<br>Time:　10:00 a.m.<br>Ctrm:　2 |

1
2
3
4
5

[*Memorandum of Points and Authorities; Separate Statement of Undisputed Material Facts; Declarations and Exhibits; and [Proposed] Order filed concurrently herewith*]

6  **TO THE HONORABLE COURT AND ALL PARTIES:**

7       PLEASE TAKE NOTICE that on the above date and time, in the above

8  referenced Court, Plaintiff Obie Anthony will move for partial summary judgment

9  and/or summary adjudication of issues against Defendants County of Los Angeles

10  and Los Angeles County District Attorney's Office ("County Defendants") in Case

11  No. 13-07224-CBM (AJWx) on the following grounds:

12       1.     Undisputed facts establish that Mr. Anthony's due process rights were

13  violated by the suppression of exculpatory impeachment information relating to a

14  key prosecution witness named John Jones, in violation of *Brady v. Maryland*, 373

15  U.S. 83 (1963), and by the prosecution's use of false testimony from John Jones in

16  violation of *Napue v. People of State of Ill.*, 360 U.S. 264 (1959).

17       2.     The *Brady* and *Napue* violations in paragraph 1 have been previously

18  litigated by Defendant Los Angeles County District Attorney's Office, an agency of

19  the County of Los Angeles, resulting in a final determination that such violations

20  occurred. Under the doctrine of collateral estoppel, the County Defendants are

21  precluded from contesting these issues in this litigation.

22       Pursuant to Local Rule 7-3, counsel for Plaintiff held a conference with

23  Counsel for Defendants on December 3, 2014, but were not able to resolve or

24  narrow the issues presented in this motion.

24  //
25  //
26  //
27  //
28  //

This motion is based on the attached Memorandum of Points and Authorities, the concurrently filed Statement of Undisputed Material Facts, the declarations and exhibits submitted in support of the motion, all pleadings and papers on file herein, the hearing on this motion, and on such other and further matters as the Court deems necessary or appropriate.

KAYE, McLANE, BEDNARSKI & LITT, LLP

DATED: Dec. 8, 2014      By:    /s/ Caitlin Weisberg
                                 CAITLIN S. WEISBERG
                                 Attorneys for Plaintiff Obie S. Anthony, III

# **TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................... 1

II.     STATEMENT OF FACTS .......................................................................... 2

    A.     Current Procedural Posture of Underlying Criminal Case ................. 2

    B.     Events of 1994-1995 ......................................................................... 3

        1.     The March 27, 1994 Shooting ................................................. 3

        2.     Investigation and Prosecution of John Jones vis à vis Investigation and Prosecution of Anthony and Cole ................ 4

        3.     Trial in *People v. Anthony and Cole* ..................................... 9

    C.     Habeas Proceedings and Order ........................................................ 10

    D.     Innocence Finding ........................................................................... 11

III.    PARTIAL SUMMARY JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 56 ............................................................ 12

    A.     Legal Standard ................................................................................. 12

    B.     Elements of Plaintiff Anthony's Claims .......................................... 12

    C.     Undisputed Evidence Proves that Plaintiff's Due Process Rights Were Violated Under *Brady*. ........................................................... 13

    D.     Undisputed Evidence Proves that Plaintiff's Due Process Rights Were Violated Under *Napue*. ......................................................... 18

IV.    COLLATERAL ESTOPPEL ..................................................................... 20

    A.     Legal Standard ................................................................................. 20

    B.     All of the Elements of Collateral Estoppel Are Satisfied with Respect to the Los Angeles County Superior Court's Ruling that Mr. Anthony's *Brady / Napue* Rights Were Violated .................... 21

    C.     The Policies Underlying the Collateral Estoppel Support the Application of the Doctrine ........................................................... 23

V.     CONCLUSION ........................................................................................ 25

# TABLE OF AUTHORITIES

## Cases

*Alcorta v. Texas*,
    355 U.S. 28 (1957) ................................................................. 19

*Allen v. McCurry*,
    449 U.S. 90 (1980) ............................................................. 20, 24

*Aronow v. Lacroix*,
    219 Cal. App. 3d 1039 (Cal. Ct. App. 1990) ................................. 23

*Ashe v. Swenson*,
    397 U.S. 436 (1970) ............................................................... 21

*Bagley v. Lumpkin*,
    798 F.2d 1297 (9th Cir. 1986) ............................................. 14, 18

*Banks v. Dretke*,
    540 U.S. 668 (2004) ................................................. 13, 14, 16, 18

*Berry v. Baca*,
    379 F.3d 764 (9th Cir. 2004) ................................................... 13

*Brady v. Maryland*,
    373 U.S. 83 (1963) ............................................................ 2, 1, 12

*Cal. Physicians' Serv. v. Aoki Diabetes Research,*
    *Inst.*, 163 Cal. App. 4th 1506 (2008) ........................................ 23

*Carriger v. Stewart*,
    132 F.3d 463 (9th Cir. 1997) ................................................... 14

*Clemmer v. Hartford Insurance Co.*,
    22 Cal. 3d 865 (1978) ............................................................ 23

*Dyson v. California State Pers. Bd.*,
    213 Cal. App. 3d 711 (Cal. Ct. App. 1989) ............................... 23, 25

*Giglio v. United States*,
    405 U.S. 150 (1972) ......................................................... 1, 14, 18

*Hayes v. Brown*,

399 F.3d 972 (9th Cir.2005) ................................................................. 19, 20

*Hernandez v. City of Pomona*,
   46 Cal. 4th 501 (2009) ..................................................................... 22

*Horton v. Mayle*,
   408 F.3d 570 (9th Cir. 2005) ...................................................... 14, 18

*Hovey v. Ayers*,
   458 F.3d 892 (9th Cir. 2006) ............................................................ 13

*Jackson v. Brown*,
   513 F.3d 1057 (9th Cir. 2008) ..................................................... 19, 20

*Kyles v. Whitley*,
   514 U.S. 419 (1995) ......................................................................... 17

*Lewis v. County of Sacramento*,
   218 Cal. App. 3d 214 (Ct. App. 1990) ............................................. 23

*Lucido v. Superior Court*,
   51 Cal. 3d 335 (Cal. 1990) ................................................. 21, 22, 24

*Lynch v. Glass*,
   44 Cal. App. 3d 943 (Cal. Ct. App. 1975) ....................................... 24

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ......................................................................... 12

*Migra v. Warren City School Dist. Bd. of Education*,
   465 U.S. 75 (1984) ........................................................................... 20

*Miller v. Superior Court*,
   168 Cal. App. 3d 376 (Cal. Ct. App. 1985) ..................................... 25

*Montana v. United States*,
   440 U.S. 147 (1979) ......................................................................... 24

*Mooney v. Holohan*,
   294 U.S. 103 (1935) ......................................................................... 19

*Morris v. Ylst*,
   447 F.3d 735 (9th Cir. 2006) ............................................................ 19

*Napue v. People of State of Ill.*,

360 U.S. 264 (1959) ...............................................................................passim

*People ex rel. State of Cal. v. Drinkhouse,*
    4 Cal. App. 3d 931 (Cal. Ct. App. 1970)....................................23, 25

*People v. Garcia,*
    39 Cal. 4th 1070 (2006)................................................................23, 24

*People v. Phillips,*
    41 Cal. 3d 29 (1985)......................................................................14, 16

*People v. Sims,*
    32 Cal. 3d 468 (1982)...........................................................................23

*People v. Westmoreland,*
    58 Cal. App. 3d 32 (Cal. Ct. App. 1976)........................................14

*Pyle v. Kansas,*
    317 U.S. 213 (1942) ............................................................................19

*Sandoval v. Superior Court,*
    140 Cal. App. 3d 932 (Cal. Ct. App. 1983) .....................................22

*Singh v. Prunty,*
    142 F.3d 1157 (9th Cir. 1998)............................................................14

*Sivak v. Hardison,*
    658 F.3d 898 (9th Cir. 2011)........................................................14, 20

*Smith v. Almada,*
    640 F.3d 931 (9th Cir. 2011)..............................................................13

*T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n,*
    809 F.2d 626 (9th Cir. 1987)..............................................................12

*United States v. Bagley,*
    473 U.S. 667 (1985) ............................................................................17

*United States v. Bernal–Obeso,*
    989 F.2d 331 (9th Cir. 1993)........................................................13, 16

*United States v. Butler,*
    567 F.2d 885 (9th Cir. 1978).......................................14, 17, 18, 19

*United States v. Shaffer,*

789 F.2d 682 (9th Cir. 1986) ................................................................. 14, 16

*United States v. Sudikoff,*
   36 F. Supp. 2d 1196 (C.D. Cal. 1999) ........................................... 14, 16

*United States v. Zuno-Arce,*
   339 F.3d 886 (9th Cir.2003) ............................................................ 19

*Zapata v. Department of Motor Vehicles,*
   2 Cal. App. 4th 108 (Cal. Ct. App. 1983) ....................................... 25

## **Statutes**

United States Constitution, Article IV, § ............................................. 20

28 U.S.C. § 1738 .................................................................................. 20

California Penal Code § 1485.55 .......................................................... 2

California Penal Code § 1485.55(b) ..................................................... 11

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

These consolidated civil rights actions concern the wrongful convictions of Plaintiffs Obie Anthony and Reggie Cole in 1995, which resulted in each of them being incarcerated for more than fifteen years. In this motion, Plaintiff Obie Anthony moves for partial summary judgment and/or summary adjudication against the County of Los Angeles and the Los Angeles County District Attorney's Office ("County Defendants") on his claim that the customs, policies, and practices of the County Defendants were a moving force behind the suppression of exculpatory impeachment information relating to a key prosecution witness named John Jones, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), and behind the prosecution's use of false testimony from John Jones in violation of *Napue v. People of State of Ill.*, 360 U.S. 264 (1959).

John Jones was charged with pimping and pandering in 1994, the same year that Obie Anthony and Reggie Cole were charged with the murder of Felipe Gonzales and related offenses. The undisputed evidence in this case demonstrates that John Jones received leniency from Defendant Los Angeles County District Attorney's Office ("DA's Office") in relation to his cooperation and testimony against Obie Anthony and Reggie Cole. While certain evidence regarding the leniency was disclosed, other evidence and information were suppressed. John Jones testified that he did not receive any special treatment from the DA's Office, and the prosecution represented to the defense attorneys, to the court, and to the jury that although Los Angeles Police Department ("LAPD") Detective Marcella Winn had written a letter requesting leniency for John Jones, he had not received leniency from the DA's office. This suppression of information and evidence and the failure to correct false testimony by John Jones violated Mr. Anthony's due process rights under well-established precedent. *See, e.g.*, *Giglio v. United States*, 405 U.S. 150 (1972) (suppression of promises of leniency made to a witness violates the due

process rights of the accused under *Brady*); *Napue v. People of State of Ill.*, 360 U.S. 264, 270 (1959) (witness's false testimony regarding promises made by the prosecutor in relation to his cooperation violates due process rights of the accused).

The *Brady* and *Napue* violations alleged by Mr. Anthony in his claims against the County Defendants have already been litigated by the parties.  In 2011, the Los Angeles County Superior Court ruled that Mr. Anthony had established these violations, and granted his petition for writ of habeas corpus, vacating the 1995 convictions. The ruling was not appealed, and Mr. Anthony was not retried. Accordingly, under the doctrine of issue preclusion, the County Defendants may not re-litigate these issues.[1]

In this motion, Plaintiff Anthony seeks a ruling that the *Brady* and *Napue* violations summarized above have been established either by collateral estoppel or by the undisputed evidence. With such a ruling, the parties would proceed to trial on the following unresolved issues: (1) the existence of a policy, custom, or practice that was a moving force behind these violations; and (2) damages.

## II.     STATEMENT OF FACTS

### A.     Current Procedural Posture of Underlying Criminal Case

In 1995, Plaintiffs Anthony and Cole were wrongfully convicted for various offenses relating to a shooting that occurred on March 27, 1994. (SF[2] 1, 37, 49, 53, 58) Both were sentenced to life imprisonment without the possibility of parole. (SF 50) During post-conviction proceedings, Plaintiffs established that the original 1995 trial suffered from numerous due process violations including suppression of

---

[1] Later, in 2014, the Los Angeles County Superior Court made a finding of innocence pursuant to a motion filed by Mr. Anthony pursuant to California Penal Code § 1485.55. The 2014 finding is currently on appeal. (SF 61)

[2] "SF" refers to the Separate Statement of Undisputed Material Facts filed concurrently herewith.

exculpatory evidence, false testimony, and ineffective assistance of counsel. (SF 53, 58) As a result, Plaintiffs' convictions were vacated in 2009 (Cole) and 2011 (Anthony), following a pair of evidentiary hearings and successful habeas petitions. (SF 53, 57, 58) The District Attorney's Office, when given the opportunity, chose not to reprosecute either Mr. Anthony or Mr. Cole. (SF 53, 58)

### B.   Events of 1994-1995

#### 1.   The March 27, 1994 Shooting

On March 27, 1994, a robbery/shooting occurred outside of a brothel on the corner of 49th and Figueroa, killing one man (Felipe Gonzalez) and severely injuring two of his friends (Victor Trejo and Luis Jimenez). (SF 1, 14) According to witnesses, the perpetrators were several black men who attempted to rob the three victims, shot them, and ran away on foot. (SF 3) The crime occurred at approximately 11:30 p.m.  (SF 1) LAPD homicide detectives Marcella Winn and Rytis Peter Razanskas, individual defendants in the consolidated cases, were assigned to the case.[3] (SF 2)

Plaintiffs were convicted based exclusively on eyewitness identifications by

---

[3] In their actions against the City of Los Angeles and Detectives Winn and Razanskas, Plaintiffs Anthony and Cole allege that the defendant detectives are liable because they caused various due process violations that resulted in the wrongful convictions of Mr. Anthony and Mr. Cole. As alleged, defendant detectives wrote misleading and false reports that omitted significant information regarding John Jones's involvement in the crime, credibility, bias, and motivation to testify. The reports also suppressed material information regarding the reliability of the identifications made by John Jones, Victor Trejo, and Arthur Jones, which were tainted by suggestive identification procedures. The detectives allegedly failed to correct false testimony given at trial by John Jones, Arthur Jones, and detective Winn. The defendant detectives also conducted a reckless investigation that targeted Mr. Anthony and Mr. Cole based on unreliable evidence, disregarded contradictory evidence, ignored material and necessary avenues of investigation, and involved collusion with a self-interested and manipulative key witness, John Jones.

---

three witnesses: John Jones, Arthur Jones, and Victor Trejo. (SF 44-46) No physical or circumstantial evidence of any kind has ever been adduced against Plaintiffs, and none was introduced by the prosecution at trial. (SF 46) The defense during the criminal trial was based on mistaken identification and alibi evidence. (SF 45)

### 2. Investigation and Prosecution of John Jones vis à vis Investigation and Prosecution of Anthony and Cole

At the time of the shooting, John Jones was a pimp who had managed the brothel on the corner of 49th and Figueroa for approximately seventeen years. (SF 14, 16) In 1983, he was convicted by plea of pandering and manslaughter. (SF 15) Both offenses arose out of the same building on 49th and Figueroa. (SF 15) The woman who was killed by John Jones had been shot twice in the head. (SF 15)

Beginning in February 1994, LAPD vice began investigating the brothel at 49th and Figueroa. Officers entered the building in February and interviewed John Jones. The officers learned that known prostitutes lived in the building, and that the building had video cameras monitoring activity at the front door.  (SF 17)

After the shooting on March 27, 1994, John Jones was the first witness to give a statement to the police. (SF 4) He gave a statement at 4:00 am on March 28, 1994, he met with the detectives again at 11:00 am on March 28, 1994, and he was interviewed by the detectives at the station on March 31, 1994, giving another statement at that time. (SF 5) On March 31, 1994, John Jones reportedly told the police that an "unknown citizen" shot at the fleeing perpetrators, wounding one of them in the leg. (SF 6) As a result of this information, detective Winn issued an alert to area hospitals for a black man with a gunshot wound in the left leg. (SF 6)

That same day, March 31, 1994, the detectives received information from Arthur Jones, a security officer at Martin Luther King Hospital, about persons matching the suspect descriptions in the alert issued by detective Winn. According to Arthur Jones, an injured man arrived at the hospital on March 30, 1994 with at least one man helping him, but they left before receiving treatment. (SF 8)

The LAPD vice investigation of John Jones continued in April. On April 14, 1994, officers obtained a statement from a patron of the brothel, and on April 22, 1994, officers arrested one of the prostitutes who worked out of the building.  Both individuals informed the police that prostitution activity was going on inside the building. The prostitute informed the police that the owner/manager collected fees from the prostitutes/patrons and "kept a record of the number of men each prostitute brought into the building." (SF 18)

On April 28, 1994, detectives Winn and Razanskas concluded based on an anonymous tip that Obie Anthony, Reggie Cole, and a third person named Michael Miller should be suspects in the Gonzales shooting. (SF 9) On May 3, 1994, detectives Winn and Razanskas showed six-packs to John Jones and his common law wife Carol Canty. John Jones identified Obie Anthony and Reggie Cole from the six-packs. Carol Canty identified a filler from the six-pack that contained Mr. Anthony's photograph, saying that the filler was a 70% match.  (SF 10)

Also on May 3, 1994, officers entered Jones building again. While inside, they observed "numerous waiting customers as well as prostitutes in various states of undress. Several of the customers advised officers that they were at the location for sexual favors."  LAPD vice surveilled the building on May 3-6, 1994. (SF 19)

On May 26, 1994, a search warrant was executed at the brothel and John Jones was arrested on charges of pimping and pandering. (SF 20) Due to his prior convictions and the current charges, John Jones was facing mandatory prison time with a minimum sentence of six years in prison. (SF 21) Jones spent 10 days in custody before bailing out. (SF 22) After he was arrested, John Jones called Detective Winn and asked for help; according to their later testimony, Detective Winn told John Jones that she couldn't help him. (SF 22)

On June 24, 1994, the detectives showed six-packs to Arthur Jones and one or more other employees of Martin Luther King hospital. Arthur Jones stated that "number one [the photo of Mr. Anthony] is the one who *come close* to look[ing] like

the subject, who came [to] MLK hospital for medical treatment to left leg." Arthur Jones also identified a filler, stating that "number one [the photo of a filler in the six-pack containing Mr. Cole's photograph] *looks like* [the] subject who was carrying the other subject in to the MLK hospital. . . ." At trial, Arthur Jones testified (contrary to his initial identification) that Mr. Anthony was not the injured person, but was rather the person who was helping the injured person. None of the other MLK eyewitnesses identified Mr. Anthony or Mr. Cole. (SF 11)

Also on June 24, 1994, the detectives showed six-packs to the surviving victims, Victor Trejo and Luis Jimenez. Mr. Jimenez did not identify Mr. Anthony or Mr. Cole. In reference to Mr. Anthony's photograph, Mr. Trejo stated: "he *looks like* the one who opened the car door and shot me and Luis." (SF 11)

Anthony and Cole were arrested and charged on June 28, 1994. (SF 37)

The DA's first offer to John Jones on his criminal charges was six years in prison. This offer was memorialized in the DA file for the John Jones case; it was not disclosed to the defense in the Anthony/Cole case. (SF 23)

On July 21, 1994, Detective Winn called the deputy district attorney handling the John Jones pimping and pandering prosecution. She informed the prosecutor that John Jones was a witness in the case against Anthony/Cole and that she wanted "to recommend leniency on [the Jones pimping and pandering case]." (SF 24) Within the same week, the prosecutors on the Jones case received telephone calls from Jones's defense attorneys. (SF 25) In the first call, the public defender representing Jones called to inform the prosecutor that he would be declaring a conflict.  (SF 25) [Cole and Anthony were represented by the public defender and the alternate public defender. (SF 38)]  In the second call, appointed defense counsel for Jones called, saying that Jones was an informant for the LAPD. (SF 25) These telephone calls were memorialized in the DA file for the John Jones case; they were not disclosed to the defense in the Anthony/Cole case. (SF 25, 55-56)

On August 11, 1994, live lineups were conducted. John Jones identified Obie

Anthony and Reggie Cole. Luis Jimenez identified no one. Victor Trejo did not identify Obie Anthony or Reggie Cole, but did positively identify a filler. Arthur Jones identified Reggie Cole and stated: "Number three [Obie Anthony] *look[s] like* suspect. . ." (SF 12)

The preliminary hearing in the Anthony/Cole prosecution was scheduled for September 12, 1994. (SF 39) On September 8, 1994, a letter written by Detective Winn requesting leniency for John Jones was sent to the DA's Office. (SF 27) On September 12, 1994, John Jones testified on behalf of the prosecution in the Anthony/Cole case. (SF 39) On October 12, 1994 a second LAPD letter was sent to the DA's Office, informing the Jones prosecutor that LAPD Vice (the unit that investigated the Jones case) would not oppose leniency. (SF 28)

In the same time period—on August 17, August 26, and September 21— Jones's appointed defense attorney had at least three telephone calls with the Jones prosecutors. (SF 26) Each of the three telephone calls addressed John Jones's cooperation with the LAPD and the letters to be obtained by the LAPD in support of leniency. (SF 26) These telephone calls were memorialized in the DA file for the John Jones case; they were not disclosed to the defense in the Anthony/Cole case. (SF 26, 55-56) Also during this period, the preliminary hearing in the Jones prosecution was continued several times. (SF 29)

Following the October 12, 1994 letter, on October 21, the DA supervisor on the Jones prosecution approved a plea for John Jones for a one year county jail lid. (SF 30) This decision was memorialized in the DA file for the John Jones case; it was not disclosed to the defense in the Anthony/Cole case. (SF 30, 55-56)

On October 24, 1994, John Jones waived his preliminary hearing rights, and the case was set for further proceedings. (SF 31) At the next appearance on November 8, 1994, John Jones pled guilty with the following summary given by the court: "My understanding is, for a variety of reasons, the DA is willing to accept a plea to count one. We will put you on probation. You don't have to do any

additional time, and I will require you to do certain terms and conditions of probation, including some Caltrans time." (SF 32) John Jones's plea was taken by Judge Tynan in Los Angeles Superior Court Department 113. In case notes, Judge Tynan wrote "Δ is a snitch in a 187. DA Wullschleger says prob[ation,] no time + Caltrans [because] of his good, if belated, citizenship." (SF 33) Judge Tynan's note was shared with the defense in the Anthony/Cole case prior to trial. (SF 33)

John Jones appeared for sentencing on January 24, 1994 in Department 123 before Judge Reid.  At that time, he was sentenced to probation, time served, and Caltrans community service. (SF 34) On the same day, January 24, 1994, two DA reports were placed in the DA file for the Jones case. (SF 35, 36) The first one, a "Second and Third Strike Report," documented the DA's decision to strike John Jones's prior, which otherwise would have prevented John Jones from receiving a probationary sentence. (SF 36) The second report, a "Disposition Report," documented the DA's action to "take plea to 266f [selling a person for immoral purposes] for a probationary sentence." (SF 35) As explanation for the settlement, DA Wullscheger wrote:

> The Δ has a prior 192a [manslaughter] in 1981. In this case he was running a house of prostitution. However since his arrest he has given information and testified in 2 murder cases which resulted in the convictions of 2 people for murder. The LAPD has written letters requesting those factors to be considered in a dispo[sition] of this case. Therefore it was agreed to strike the prior and take a plea to 266f for probation.

(SF 35) Neither the strike report nor the disposition report nor the contents of those reports was disclosed to the defense in the Anthony/Cole case. (SF 55-56)

During this time period it was "[t]he policy of [the DA's] office not to offer leniency in any form solely for the purpose of obtaining testimony which may be useful in prosecuting another person for a crime." Rather, leniency would only be appropriate if "the prospective witness's testimony is essential to a successful prosecution. . ." (SF 62) These DA policies were not disclosed to the defense in the

Anthony/Cole case.

### 3.     Trial in *People v. Anthony and Cole*

Sometime between January 24, 1994 and the beginning of trial in the Anthony/Cole case, the defense learned of the disposition of the Jones case and received copies of the LAPD letters requesting leniency on John Jones's behalf.  (SF 43, 47) The defense believed that John Jones had received leniency in exchange for his cooperation/testimony in the case against Anthony and Cole, and sought to impeach John Jones. (SF 47) Using John Jones's criminal history, the timeline of his 1994 pimping and pandering prosecution, the LAPD letters, and the probationary disposition of the Jones case, the defense sought to prove, by inference, that John Jones had received a deal. (SF 47) The prosecution represented that John Jones had not received a deal, and tried to block cross-examination by the defense attorneys. (SF 48) Over and over again, when the defense tried to impeach John Jones with the available evidence of leniency, the prosecutor and the court said: "prove it." (SF 48; *see also* Weisberg Decl. Ex. G (Chart of Testimony & Statements).) However, without the information known to the DA's Office, the defense attorneys couldn't prove anything.

Anthony and Cole were convicted and sentenced to life without parole. (SF 49, 50) On appeal, Anthony and Cole argued that John Jones should have been precluded from testifying because he "entered a plea bargain with the prosecution in a pandering case in return for his agreement to testify for the prosecution," an agreement that they argued was in violation of the California Penal Code. In rejecting this argument, the California Court of Appeal stated: "We reject the contention, for notwithstanding the many statements made by appellants, both here and before the trial court, that Jones entered into a plea bargain in the pandering case in return for his testimony in the instant case, we find nothing in the record to support them. . . . Without question he was asked to testify, because he did so; but there is no proof he agreed to do so in exchange for a reduced charge." (SF 51-52)

### C.   Habeas Proceedings and Order

In 2010, Mr. Anthony filed a petition for writ of habeas corpus alleging that his conviction was unconstitutional due to, *inter alia*, the suppression of exculpatory evidence, prosecutorial misconduct, false testimony, and ineffective assistance of counsel.  The District Attorney's Office contested the petition. (SF 54)

The Los Angeles Superior Court, the honorable Judge Kelvin Filer presiding, held a ten day evidentiary hearing during which thirteen live witnesses testified and more than 112 exhibits were entered into evidence. At the conclusion of the hearing, on September 30, 2011, the superior court granted the petition and vacated Mr. Anthony's 1995 convictions. (SF 57, 58)

In granting Mr. Anthony's habeas petition, the court found that the DA's Office had made a "quid pro quo" deal with John Jones that was not disclosed to the defense. (SF 59) The court ruled that the suppression of this information violated Mr. Anthony's rights under *Brady* and *Napue*. (SF 59) Specifically, the court stated:

*Habeas Order (Kaneb Decl., Ex. B at OSA 006678, OSA 006685-89)*

John Jones consistently denied at trial that he receive[d] any special treatment. The Deputy District Attorney never corrected this misinformation about John Jones's deal. It is clear from the DA's notes on Jones's pending case and the court's notes on Jones's pending case that Jones received a favorable disposition in exchange for testimony against petitioner. It is evident that the defense at trial was limited in its efforts about the Jones deal because the prosecution did not turn over the information in their files which clearly reflect a deal. The Court recognizes [the DA's] position that John Jones's arrest on the pimping and pandering case came after he had already talked to the detectives [on the Anthony/Cole case]. However, a review of the files/notes in [the pimping and pandering] case convinces this Court that there was a "quid pro quo" for Jones's testimony. . . .

[T]his Court is convinced that Jones specifically lied to the jury when he claimed that he had not received special treatment in his pimping/pandering case in exchange for his testimony against the petitioner. . . . . This court has determined and stated that John Jones was the pivotal witness for the prosecution on this case. Throughout the trial he denied or cleverly avoided acknowledging that he was a "snitch" who had received a favorable disposition in his own case in exchange for testifying at petitioner's trial. . . . The prosecution should have corrected that false

testimony. [citation]

Granted there was a lot of discussion on this issue at trial and the defense aggressively challenged Jones's lie with the information that they had. However, the new evidence from the DA's file and the complete court file specifically and clearly show that Jones was an informant on other cases for the LAPD and that he received a "sweetheart deal" for testifying against the petitioner. So, what consumed pages and pages of questions and arguments on the issue should have been a half-page stipulation as to Jones's status as a witness. The jury should have been advised of his status as an informant or "snitch." It naturally follows that if a witness's false testimony is corrected by the prosecution, his "willingness to lie under oath is exposed and his credibility is irreparably damaged." [citation] Evidence is "material or probative" if there is a reasonable probability that, had it not been introduced, the result of the proceeding would have been different. [citation] As has been stressed, John Jones testimony was inherently false, and the showing of its falseness undermines the reviewing court's confidence in the outcome of the trial. [citation] In this case, this was a critical error and, for all of the reasons above, this Court finds that there is a reasonable likelihood that the false testimony could have affected the judgment of the jury.

Moreover it is clear that Jones's impact as a witness was a crucial issue for the trial . . . . It is well established that "evidence of a deal or promise of lenient treatment in exchange for a witness's testimony against a defendant may constitute evidence that must be disclosed under *Brady* and *Napue*." [citation] This information about Jones was suppressed evidence which clearly would have been favorable to the defense at petitioner's trial. Several cases have found this type of error to have *Brady* ramifications. [citatons]

The District Attorney's Office did not appeal the court's order vacating the conviction and dismissed all charges against Anthony, declining to reprosecute. (SF 58) Anthony was released from custody on October 4, 2011. (SF 60) By the time he was released from custody, Plaintiff Anthony had been wrongfully imprisoned for more than seventeen (17) years. (SF 60)

### D.    Innocence Finding

In February 2014, Anthony filed a motion for a finding of innocence by a preponderance of the evidence pursuant to California Penal Code § 1485.55(b) before Judge Filer. The DA's Office opposed to the motion. Following a hearing,

the superior court granted the motion on May 30, 2014 and issued a finding of innocence, which the DA's Office appealed. The appeal is pending. (SF 61)

### III.   PARTIAL SUMMARY JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 56

#### A.   Legal Standard

Under Federal Rule of Civil Procedure 56, summary judgment is granted only if "there is no genuine dispute as to any material fact [such that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Because "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge," when reviewing a grant of summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. "[I]f a rational trier of fact might resolve the issue in favor of the nonmoving party, summary judgment must be denied." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). Alternatively, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 at 587.

#### B.   Elements of Plaintiff Anthony's Claims

To establish *Monell* liability against the County Defendants, Plaintiff must first prove that Plaintiff's due process rights under *Brady v. Maryland*, 373 U.S. 83 (1963) and *Napue v. People of State of Ill.*, 360 U.S. 264 (1959) were violated.[4] "To

---

[4] Once a violation has been established, Plaintiff must prove that the deprivation of rights was caused by the policies, customs, and practices of the County Defendants with regard to the disclosure of benefits received by witnesses or by the County Defendants' deliberately indifferent failure to establish adequate administrative procedures to address the usual and recurring situation of disclosing

[prevail] under *Brady*, the plaintiff must [prove] that (1) the withheld evidence was favorable either because it was exculpatory or could be used to impeach, (2) the evidence was suppressed by the government, and (3) the nondisclosure prejudiced the plaintiff." *Smith v. Almada*, 640 F.3d 931, 939 (9th Cir. 2011) (internal citation omitted). "To prevail on a *Napue* claim, the petitioner must show that (1) the testimony (or evidence) was actually false, (2) the prosecution knew or should have known that the testimony was actually false, and (3) . . . the false testimony was material. *Hovey v. Ayers*, 458 F.3d 892, 916 (9th Cir. 2006) (citation omitted).

### C.   Undisputed Evidence Proves that Plaintiff's Due Process Rights Were Violated Under *Brady*.

John Jones was a sophisticated criminal and an important prosecution witness in the Anthony/Cole case. John Jones's own criminal case (and the minimum sentence of six years) gave him a strong incentive to cooperate with the prosecution and testify favorably against Anthony and Cole. This bias made him unreliable. "By definition, criminal informants are cut from untrustworthy cloth and must be managed and carefully watched by the government and the courts to prevent them from falsely accusing the innocent, from manufacturing evidence against those under suspicion of crime, and from lying under oath in the courtroom," *United States v. Bernal–Obeso*, 989 F.2d 331, 333 (9th Cir. 1993); *see also Banks v. Dretke*, 540 U.S. 668, 701-02 (2004) ("This Court has long recognized the 'serious questions of credibility' informers pose.")

The cure for the perils of biased informant testimony is full disclosure of information. Courts have repeatedly and consistently found that any evidence regarding benefits for prosecution witnesses—whether explicit or implicit, whether

---

(…continued)
information regarding benefits to witnesses. *See Berry v. Baca*, 379 F.3d 764, 767 (9th Cir. 2004). This motion does not seek summary judgment on the *Monell* elements of Plaintiff's claim against the County Defendants.

past or future, whether or not related to the current prosecution, and whether or not known to the defendant—is favorable impeachment evidence that must be disclosed. *Banks*, 540 U.S. 668; *Giglio v. United States*, 405 U.S. 150 (1972); *Sivak v. Hardison*, 658 F.3d 898 (9th Cir. 2011); *Horton v. Mayle*, 408 F.3d 570 (9th Cir. 2005); *Singh v. Prunty*, 142 F.3d 1157 (9th Cir. 1998); *Carriger v. Stewart*, 132 F.3d 463, 479 (9th Cir. 1997); *Bagley v. Lumpkin*, 798 F.2d 1297, 1302 (9th Cir. 1986); *United States v. Shaffer*, 789 F.2d 682, 691 (9th Cir. 1986); *United States v. Butler*, 567 F.2d 885, 889 (9th Cir. 1978); *United States v. Sudikoff*, 36 F. Supp. 2d 1196, 1203 (C.D. Cal. 1999); *People v. Phillips*, 41 Cal. 3d 29, 47 (1985). This is because "[t]he jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend." *Napue*, 360 U.S. at 269.

As summarized by one court:

> [The prosecutor] must disclose to all other defendants any offer he has made to the prospective witness concerning a plea of guilty to a lesser offense, or other lenient treatment, regardless of his reasons for making the offer. The district attorney also must disclose to all defendants any discussions he may have had with the potential witness as to the possibility of leniency in exchange for favorable testimony even though no offer actually was made or accepted. Second, the district attorney must correct any false or misleading testimony that he knows a prosecution witness has created as to discussions or offers of leniency, or other inducements for testifying, regardless as to whether he was any affirmative part in creating the false or misleading impressions.

*People v. Westmoreland*, 58 Cal. App. 3d 32, 46-47 (Cal. Ct. App. 1976); *see also Sudikoff*, 36 F. Supp. 2d at 1201 ("[I]nformation that reveals *the process by which an accomplice witness and the government reach a leniency agreement* is relevant to the witness's credibility because it reveals the witness's motive to testify against the defendant. . . . and must be disclosed under *Giglio*." (emphasis added)).

Regardless of whether or not John Jones received a "quid pro quo" deal, it is

impossible to dispute that the DA's Office suppressed impeachment evidence relating the question of whether or not John Jones received leniency. The prosecution repeatedly represented to the trial court and the defense attorneys that John Jones had not received leniency from the DA's office and that the disposition of the Jones pimping and pandering case was unremarkable. John Jones testified that he had not received any "special treatment." When the defense attorneys alleged, based on circumstantial evidence, that the DA's Office had given Jones leniency, the DA denied the allegation and stated "prove it." The court followed suit.

When the DA file for the Jones case was finally produced in 2010, it contained (at least) three documents that strongly impeached John Jones's testimony that he didn't receive any help or special treatment and corroborated the defense theory that John Jones received a leniency deal from the DA's office.  The first document was the DA chronology notes for the Jones case (Exhibit 73), which revealed: (1) that the initial offer to Jones was six years; (2) that Winn had a telephone call with the Jones prosecutor in July (before the live lineup) about recommending leniency for Jones; and (3) that Jones's defense attorney had multiple telephone calls with the Jones prosecutor about John Jones being an informant for the LAPD and getting leniency (many of which occurred before the Anthony/Cole preliminary hearing in September 1994).

The second and third documents were the DA strike report (Exhibit 115) and the DA Disposition Report (Exhibit 80), which confirmed that the DA's office had, indeed, made an explicit agreement to strike Jones's manslaughter prior and recommend probation based on his cooperation with the police/prosecution and the recommendations made in the LAPD letters. The disposition report states, in reference to the cooperation and the letters, "[t]herefore, *it was agreed* to strike the prior and take a plea to 266f for probation." (emphasis added).

The information in the DA file was not cumulative and the defense's vigorous efforts to impeach John Jones with the information they had does not diminish the

materiality of the suppressed information. The prosecution and John Jones were denying that John Jones received, from the DA's Office, any consideration or leniency with respect to the disposition of the pimping and pandering case. The defense could have used the suppressed DA file information to further impeach the truthfulness of John Jones's testimony.

Courts "expect prosecutors and investigators to take all reasonable measures to safeguard the system against treachery. This responsibility includes the duty as required by *Giglio* to turn over to the defense in discovery *all material information* casting a shadow on a government witness's credibility." *Bernal–Obeso*, 989 F.2d at 334 (emphasis added); *Shaffer*, 789 F.2d at 690 ("While it is clear that an explicit agreement [regarding benefits] would have to be disclosed because of its effect on [a witness's] credibility, it is equally clear that facts which imply an agreement would also bear on [] credibility and would have to be disclosed."); *Phillips*, 41 Cal. 3d at 47 ("Consequently, when an accomplice testifies for the prosecution, *full disclosure of any agreement affecting the witness* is required to ensure that the jury has a complete picture of the factors affecting the witness' credibility." (emphasis added)); *see also Sudikoff*, 36 F. Supp. 2d at 1203 (C.D. Cal. 1999) ("The motive behind a[ criminal informant's] agreement to testify may range from a simple quid pro quo to an earnest desire to disclose the truth. The defense cannot distinguish between such motives unless the government reveals information about the negotiation leading to the agreement.").

Courts have rejected the notion that the disclosure of some information regarding witness benefits and/or cross-examination regarding benefits excuses the suppression of other information.  *See, e.g., Banks*, 540 U.S. at 702-03 (rejecting the state's argument "that [the witness] was heavily impeached [at trial], rendering his informant status merely cumulative." (internal quotations omitted)); *Shaffer*, 789 F.2d at 689 (holding that partial disclosure of benefits information was insufficient and rejecting "the government's contention that this type of impeachment strategy,

1    emphasizing the scope of the witness' cooperation with the government, is not

2    material to warrant a new trial.").

3         In *United States v. Butler*, 567 F.2d 885, 887 (9th Cir. 1978), evidence

4    discovered after trial showed that the government's key witness may have been

5    promised leniency in relation to his testimony against the defendant. The witness's

6    "credibility was frequently and vigorously attacked [during the course of the trial

7    and o]ne of the principal lines of assault comprised asking [the witness] whether . . .

8    the pending indictment against him was going to be dismissed in consideration of

9    his testimony against the defendant. To this question, he answered 'no.'"  The

10   government contested the significance of the new evidence regarding promises of

11   leniency and argued that, in any event, such evidence would be cumulative to

12   disclosed prosecution promise to bring witness's cooperation to the attention of the

13   sentencing judge. The court rejected this argument because "[b]oth by casting doubt

14   on the prosecution case and by increasing the scope of the closing defense

15   arguments, disclosure of *the exact nature of the prosecution's dealings with its key*

16   *witness* would certainly have affected the weight given to his testimony by the jury."

17   *Id.* at 890-91 (emphasis added).

18        Exculpatory impeachment evidence is material if "there is a reasonable

19   probability that, had the evidence been disclosed to the defense, the result of the

20   proceeding would have been different. A 'reasonable probability' is a probability

21   sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473

22   U.S. 667, 682 (1985); *see also Kyles v. Whitley*, 514 U.S. 419, 434 (1995) ("The

23   question is not whether the defendant would more likely than not have received a

24   different verdict with the evidence, but whether in its absence he received a fair trial,

25   understood as a trial resulting in a verdict worthy of confidence.").

26        John Jones was an important prosecution witness. In light of the absence of

27   physical evidence and the mistaken identity/alibi defense, each of the three

28   eyewitnesses were essential to the prosecution.  Even so, John Jones was the most

important of the three. John Jones was the only witness who positively identified Mr. Anthony prior to seeing the defendants in orange jump suits in court. (SF 10-12, 39) Also, John Jones was the exclusive source of information regarding the "unknown citizen" who shot at the fleeing perpetrators, wounding one of them in the leg.  (SF 7) Without this evidence, Arthur Jones would not have been a witness at all. (SF 6-8) If John Jones had not testified, the prosecution's only identification would have come from Victor Trejo, who failed to identify either defendant during the live lineup, who was positive that a filler in the live lineup was one of the perpetrators, and who testified that when he made the six-pack identification of Mr. Anthony he was picking a photograph that "looked like" the perpetrator and had doubt because he "couldn't remember the person very clearly" and "never got a good look at him." (SF 11-12, 40)

The suppressed impeachment evidence regarding benefits was material because John Jones was a key prosecution witness and because John Jones gave false and/or misleading evidence regarding the leniency that he received. *Giglio*, 405 U.S. 150 (benefits evidence material because "key witness"); *Banks*, 540 U.S. at 698-703 (benefits evidence material because "key witness"); *Horton*, 408 F.3d at 578-79 (benefits evidence material because witness's "testimony was central to the prosecution's case"); *Bagley v. Lumpkin*, 798 F.2d at 1301 (same); *Butler*, 567 F.2d at 887 (benefits evidence material because "key witness" denied receiving benefits).

As stated by the Ninth Circuit in *Bagley v. Lumpkin*, "Evidence of bias and prejudice is certainly material for impeachment, but *lies under oath to conceal bias and prejudice* raise the impeachment evidence to such a level that it is difficult to imagine anything of greater magnitude that would undermine confidence in the outcome of any trial." 798 F.2d at 1301 (emphasis added).

**D.**    **Undisputed Evidence Proves that Plaintiff's Due Process Rights Were Violated Under *Napue*.**

It is well established that a defendant's due process rights are violated by the

1   use of false testimony. *Napue*, 360 U.S. at 269-70; *Alcorta v. Texas*, 355 U.S. 28, 31

2   (1957); *Pyle v. Kansas*, 317 U.S. 213, 216 (1942); *Mooney v. Holohan*, 294 U.S.

3   103, 112 (1935). "The principle that a State may not knowingly use false evidence,

4   including false testimony, to obtain a tainted conviction, implicit in any concept of

5   ordered liberty, does not cease to apply merely because the false testimony goes

6   only to the credibility of the witness." *Napue*, 360 U.S. at 269.

7        False evidence is shown where a witness's testimony gives the jury a false

8   impression. *Alcorta*, 355 U.S. at 31 (due process violation where witness's

9   testimony "gave the jury a false impression"); *Jackson v. Brown*, 513 F.3d 1057,

10   1075 (9th Cir. 2008) (*Napue* violation where testimony is "false and misleading");

11   *Butler*, 567 F.2d at 891 (9th Cir. 1978) (*Napue* violation where "government permits

12   a witness to parade himself in false colors").

13        "When a prosecutor suspects perjury, the prosecutor must at least investigate.

14   The duty to act 'is not discharged by attempting to finesse the problem by pressing

15   ahead without a diligent and good faith attempt to resolve it. A prosecutor cannot

16   avoid this obligation by refusing to search for the truth and remaining willfully

17   ignorant of the facts.'" *Morris v. Ylst*, 447 F.3d 735 (9th Cir. 2006). Thus, "*Napue*

18   applies whenever a prosecution 'knew *or should have known* that the testimony was

19   false.'" *Jackson*, 513 F.3d at 1075 (quoting *Hayes v. Brown*, 399 F.3d 972, 984 (9th

20   Cir.2005) (en banc) and *United States v. Zuno-Arce*, 339 F.3d 886, 889 (9th

21   Cir.2003)) (emphasis added). Because "the prosecutor has a duty to investigate and

22   disclose favorable evidence known only to [other prosecutors or] the police, he

23   'should know' when a witness testifies falsely about such evidence." *Id.* at 1075.

24        "The materiality analysis proceeds differently for *Brady* and *Napue* claims.

25   Whereas a *Brady* violation is material when "there is a reasonable probability that

26   . . . the result of the proceeding *would* have been different," a *Napue* violation

27   requires that the conviction be set aside whenever there is "*any* reasonable

28   likelihood that the false testimony *could* have affected the judgment of the jury."

---

1   *Jackson*, 513 F.3d at 1076 (internal citations omitted).

2       Although the Anthony/Cole DA did not know about the "special treatment"

3   received by John Jones, which proved the falsity of John Jones testimony, he should

4   have known because that information was known to the DA's Office. For all of the

5   same reasons argued above, the testimony by John Jones denying that he received

6   "special treatment" and feigning ignorance of the process by which he received

7   probation gave the jury a false impression and was material. *See, e.g.*, *Sivak*, 658

8   F.3d 898 (false testimony of a witness regarding state's agreement to dismiss felony

9   charges); *Jackson*, 513 F.3d at 1076 (same); *Hayes*, 399 F.3d 972 (same).

10  **IV.   COLLATERAL ESTOPPEL**

11      **A.   Legal Standard**

12      The doctrine of collateral estoppel applies in full force in § 1983 actions to

13  give preclusive effect to underlying state court judgments. *Migra v. Warren City*

14  *School Dist. Bd. of Education*, 465 U.S. 75, 83-84 (1984); *Allen v. McCurry*, 449

15  U.S. 90, 96-97 (1980). It is well established that "a federal court must give to a

16  state-court judgment the same preclusive effect as would be given that judgment

17  under the law of the State in which the judgment was rendered." *Migra*, 465 U.S. at

18  81 (applying Ohio law to determine preclusive effect of state court judgment in

19  subsequent federal § 1983 action). This rule is mandated by 28 U.S.C. § 1738,

20  implementing Article IV, § 1 of the United States Constitution, which requires

21  federal courts give full faith and credit to state court decisions. *Id.* at 80-81. The

22  statute "reflects a variety of concerns, including notions of comity, the need to

23  prevent vexatious litigation, and a desire to conserve judicial resources." *Id.* at 84.

24  Because the earlier decision at issue in this motion is a decision by the Superior

25  Court of the State of California, the collateral estoppel determination in this case

26  depends on California law.

27      Under California law, collateral estoppel applies where the moving party

28  establishes the following five elements: "First, the issue sought to be precluded from

relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding." *Lucido v. Superior Court*, 51 Cal. 3d 335, 341 (Cal. 1990); *see generally* Cal. Jur. 3d §158 (listing same requirements as four elements by merging the second and third *Lucido* elements).

"'Collateral estoppel' is an awkward phrase, but it stands for an extremely important principle in our adversary system of justice. It means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit. . . . The inquiry 'must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings.' Any test more technically restrictive would, of course, simply amount to a rejection of the rule of collateral estoppel . . . ." *Ashe v. Swenson*, 397 U.S. 436, 443-44 (1970) (citation omitted)

### B. All of the Elements of Collateral Estoppel Are Satisfied with Respect to the Los Angeles County Superior Court's Ruling that Mr. Anthony's *Brady* / *Napue* Rights Were Violated

The Los Angeles Superior Court found that John Jones received a "quid pro quo" deal from the DA's Office which was suppressed by the prosecution, and that John Jones lied under oath about receiving the deal. Kaneb Decl. ¶ 11 & Ex. B at OSA 006685-89. The Court ruled that such suppression and failure to correct false testimony violated Mr. Anthony's rights under *Brady* and *Napue*. *Id.* Having litigated this issue and lost, collateral estoppel prevents the County Defendants from litigating it again.

1.   *Identical Issue*. "The 'identical issue' requirement addresses whether 'identical factual allegations' are at stake in the two proceedings, not whether the

ultimate issues or dispositions are the same." *Hernandez v. City of Pomona*, 46 Cal. 4th 501, 511-12 (2009); *Lucido*, 51 Cal. 3d at 342. As can be seen from the content of this motion and from the content of the Habeas Order, the issue in both proceedings is whether Mr. Anthony's due process rights were violated by the DA Office's suppression of the evidence in the DA file relating to leniency given to John Jones and the failure to correct false testimony by John Jones on that subject.

2.    *Actually Litigated*. "[A]n issue was actually litigated in a prior proceeding if it was properly raised, submitted for determination, and determined in that proceeding." *Hernandez*, 46 Cal. 4th at 511-12. In the habeas proceeding, the *Brady/Napue* claims relating to the leniency deal for John Jones were raised and disputed. The superior court resolved that dispute in the Habeas Order. *See* Kaneb Decl. ¶¶ 7, 9, 11 & Ex. B at OSA 006685-89.

3.    *Necessarily Decided*. An issue is deemed to be "necessarily decided" if it is not "entirely unnecessary" to the judgment. *Lucido*, 51 Cal. 3d at 342, 354. In this case, the superior court made clear that the claims in the petition regarding the leniency deal for John Jones were "the crux of petitioner's position." Kaneb Decl., Ex. B at OSA 006686.

4.    *Final on the Merits*. A decision on an issue is final if it is "free from direct attack" by appeal. *Lucido*, 51 Cal. 3d at 342. For collateral estoppel, a decision may also be considered final if it "sufficiently firm to be accorded conclusive effect." *Sandoval v. Superior Court*, 140 Cal. App. 3d 932, 936 (Cal. Ct. App. 1983) (quoting Rest. 2d Judgments, § 13). In this case, the DA's office did not appeal the 2011 Habeas Order, making it final. Kaneb Decl. ¶ 11.[5]

_____

[5] Because the Superior Court's innocence finding is not yet final, Plaintiff cannot move at this juncture for collateral estoppel. In the event that the Court grants this motion based on collateral estoppel and the innocence finding become final prior to trial, Plaintiff will move for collateral estoppel as to that issue.

5.      *Same Party / Privity.* Under California law, privity exists where there is a "sufficiently close" relationship between the parties to the two proceedings such that the estopped party "should reasonably have expected to be bound by the prior adjudication." *People v. Sims*, 32 Cal. 3d 468, 486-87 (1982); *Clemmer v. Hartford Insurance Co.*, 22 Cal. 3d 865, 875 (1978). "The courts, in the interest of justice and to prevent expensive litigation, are striving to give effect to judgments by extending 'privies' beyond the classical description. . . . The emphasis is not on a concept of identity of parties, but on the practical situation. The question is whether the non-party is sufficiently close to the original case to afford application of the principle of preclusion." *People ex rel. State of Cal. v. Drinkhouse*, 4 Cal. App. 3d 931, 937 (Cal. Ct. App. 1970) (citations omitted); *see also Cal. Physicians' Serv. v. Aoki Diabetes Research Inst.*, 163 Cal. App. 4th 1506, 1521 (2008) (noting that in California, "the word 'privy' has acquired an expanded meaning"). "Entities that are 'agents of the same government' are generally found to be in privity, because they are both acting to vindicate the rights of the same governmental entity." *People v. Garcia*, 39 Cal. 4th 1070, 1078 (2006) (internal citations omitted).

In this case, the County Defendants are in privity with the respondent in the habeas proceedings, because the DA's Office, a county agency, represented the respondent and controlled all aspects of the litigation. *See Garcia*, 39 Cal. 4th at 1078 (County and DA's Office in privity because both are "county agencies that are designated by statute to represent the interests of the State of California"); *Aronow v. Lacroix*, 219 Cal. App. 3d 1039, 1048-49 (Cal. Ct. App. 1990) (privity between attorney and former client); *Lewis v. County of Sacramento*, 218 Cal. App. 3d 214, 219 (Ct. App. 1990) (privity between government employer acting in representative capacity and represented employee); *Dyson v. California State Pers. Bd.*, 213 Cal. App. 3d 711, 727 (Cal. Ct. App. 1989) (privity between state agency and county district attorney because actors and interests in litigation were sufficiently close).

**C.      The Policies Underlying the Collateral Estoppel Support the**

### Application of the Doctrine

California courts have held that certain public policies "favor the application of collateral estoppel in a given case even though precise identity of the parties and issues may be lacking." *Lynch v. Glass*, 44 Cal. App. 3d 943, 947 (Cal. Ct. App. 1975). The primary public policies supporting collateral estoppel are "preservation of the integrity of the judicial system, promotion of judicial economy, and protection of litigants from harassment by vexatious litigation." *Lucido*, 51 Cal. 3d at 343; *see also Allen*, 449 U.S. at 94. In addition, California courts have applied collateral estoppel to "further the finality of litigation in which public interests are involved [and] to promote the stability of adjudications in prior criminal actions." *Lynch*, 44 Cal. App. 3d at 947-48.

In this case, all of the policy justifications for collateral estoppel support the application of the doctrine. "[T]he integrity of the judicial system is threatened whenever two tribunals render inconsistent" findings based on the same evidence. *Garcia*, 39 Cal. 4th at 1097 (Chin, J., concurring and dissenting) (quoting *Lucido*, 51 Cal. 3d at 347). The inconsistency results in an erosion of public confidence and renders both decisions suspect. *Id.* at 1079, 1097. "Application of both doctrines [claim and issue preclusion] is central to the purpose for which civil courts have been established, the conclusive resolution of disputes within their jurisdiction. . . . To preclude [relitigation of decided issues] . . . fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. United States*, 440 U.S. 147, 153-54 (1979). Here, any inconsistent ruling the civil rights case would serve to undermine the state court decision and reliance on that decision promotes finality of and reliance on judicial action.

Similarly, the application of collateral estoppel in this case would promote judicial economy and prevent repetitive, unnecessary, and vexatious litigation. The habeas proceeding was conducted over two weeks with numerous witnesses and hundreds of pages of exhibits. The DA's Office had its day in court with respect to

the evidence underlying Plaintiff's *Brady/Napue* claims. No justification exists for revisiting the resolution of those claims by the superior court.

Based on these policy rationales, California courts have repeatedly given collateral estoppel effect to judgments and rulings in earlier criminal proceedings. *Miller v. Superior Court*, 168 Cal. App. 3d 376 (Cal. Ct. App. 1985) (issues in tort suit by rape victim against city employer of police officer rapist precluded by earlier criminal conviction of officer for rape); *Dyson*, 213 Cal. App. 3d 711 (issues in disciplinary proceeding by agency against employee precluded by earlier dismissal of criminal case against employee based on same events); *Zapata v. Department of Motor Vehicles*, 2 Cal. App. 4th 108 (Cal. Ct. App. 1983) (DMV precluded from relitigating illegality of driver's arrest for drunk driving which was decided against the district attorney during a criminal proceeding); *Drinkhouse*, 4 Cal. App. 3d 931 (issues in civil proceeding regarding sale of property precluded by earlier criminal prosecution relating to same transaction).

## V.   CONCLUSION

For all of the foregoing reasons, Plaintiff Anthony respectfully requests that the Court grant this motion.

KAYE, McLANE, BEDNARSKI & LITT, LLP

DATED: Dec. 8, 2014          By:   */s/ Caitlin Weisberg*
                                   CAITLIN S. WEISBERG
                                   Attorneys for Plaintiff Obie S. Anthony, III

1  MARILYN E, BEDNARSKI (No. 105322)
2  mbednarski@kmbllaw.com
   DAVID S. McLANE (No.124952)
3  dmclane@kmbllaw.com
   CAITLIN S. WEISBERG (No. 262779)
4  cweisberg@kmbllaw.com
5  KAYE, McLANE, BEDNARSKI & LITT, LLP
   234 East Colorado Boulevard, Suite 230
6  Pasadena, California 91101
7  T: (626) 844-7660 / F: (626) 844-7670

8  Attorneys for Plaintiff OBIE STEVEN ANTHONY, III.

9             **UNITED STATES DISTRICT COURT**

10            **CENTRAL DISTRICT OF CALIFORNIA**

11

| | |
|---|---|
| 12  REGGIE D. COLE, | Case No. CV 11-03241-CBM (AJWx) |
|           Plaintiff, | [*Cole Action*] |
| 13 | |
|         v. | Case No. CV 12-01332-CBM (AJWx) |
| 14 | [*Anthony City Action*] |
| 15  CITY OF LOS ANGELES et al., | |
|           Defendants. | Case No. CV 13-07224-CBM (AJWx) |
| 16  ─────────────────── | [*Anthony County Action*] |
| 17  OBIE S. ANTHONY, III, | |
| 18         Plaintiff, | [Honorable Consuelo B. Marshall] |
| 19        v. | **SEPARATE STATEMENT OF** |
| 20  CITY OF LOS ANGELES et al., | **UNDISPUTED MATERIAL FACTS** |
|           Defendants. | **IN SUPPORT OF PLAINTIFF** |
| 21 | **ANTHONY'S MOTION FOR** |
| 22  ─────────────────── | **PARTIAL SUMMARY JUDGMENT** |
| 23  OBIE S. ANTHONY, III, | **AND/OR SUMMARY** |
|         Plaintiff, | **ADJUDICATION OF ISSUES** |
| 24 | **AGAINST DEFENDANTS COUNTY** |
|        v. | **OF LOS ANGELES AND LOS** |
| 25  COUNTY OF LOS ANGELES, et al., | **ANGELES COUNTY DISTRICT** |
| 26         Defendants. | **ATTORNEY'S OFFICE** |
| 27 | Date:   January 13, 2015 |
| 28 | Time:   10:00 a.m. |

Ctrm:   2

[*Notice of Motion and Motion for Partial Summary Judgment and/or Summary Adjudication of Issues; Memorandum of Points and Authorities; Declarations and Exhibits; and [Proposed] Order filed concurrently herewith*]

**TO THE HONORABLE COURT AND ALL PARTIES:**

Pursuant to Local Rule 56-1, Plaintiff Obie Anthony, by and through counsel, respectfully submits the attached Separate Statement of Undisputed Material Facts in support of his Motion for Partial Summary Judgment and/or Summary Adjudication of Issues against Defendants County of Los Angeles and Los Angeles County District Attorney's Office ("County Defendants") in Case No. 13-07224-CBM (AJWx).

This Statement of Undisputed Material Facts is not intended to be a complete recitation of all of the facts supporting Plaintiff's claims against the County Defendants. Disputed facts supporting Plaintiff's claims were not included, pursuant to the appropriate standard of review for summary judgment motions. Plaintiff also excluded facts, disputed and undisputed, supporting the *Monell* elements of Plaintiff's claims as those elements are not addressed by the motion. Finally, Plaintiff did not cite all available evidence supporting the undisputed facts, some of which might clarify or strengthen those facts.

KAYE, McLANE, BEDNARSKI & LITT, LLP

DATED: Dec. 8, 2014      By:   */s/ Caitlin Weisberg*

CAITLIN S. WEISBERG
Attorneys for Plaintiff Obie S. Anthony, III

## PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS

| FACTS | EVIDENCE |
|---|---|
| 1.       At approximately 11:30 p.m. on March 27, 1994, Felipe Angeles Gonzales was shot and killed at the corner of 49th Street and Figueroa Street in South Los Angeles. Companions of Mr. Gonzales named Luis Jimenez and Victor Trejo were also shot but survived. | Dep. Exs. 49, 50. |
| 2.       LAPD homicide detectives Marcella Winn and Rytis Peter Razanskas were assigned to investigate the Gonzales murder. | Dep. Exs. 49, 50. |
| 3.       According to witnesses, the perpetrators were several black men who attempted to rob the three victims, shot them, and ran away on foot. | Dep. Exs. 49, 50. |
| 4.       After the shooting on March 27, 1994, John Jones was the first witness to give a statement to the detectives. | Dep. Exs. 1, 8, 49; Winn Trial Testimony (Weisberg Decl. Ex. A at OSA 001858-60). |
| 5.       John Jones gave a statement at 4:00 am on March 28, 1994. He met with the detectives again at 11:00 am on March 28, 1994 and gave them a surveillance video from his building. He was interviewed by the detectives at the station on March 31, 1994, giving another statement at that time. | Dep. Exs. 1, 8, 15, 50. |
| 6.       In his March 31, 1994 statement to the LAPD, John Jones reportedly told the police that an "unknown citizen" shot at the fleeing perpetrators, wounding one of them in the leg. As a result of this information, detective Winn issued an alert to area hospitals to be on the lookout for a black man with a gunshot wound in the left leg. | Dep. Exs. 1, 15, 16, 49, 50; John Jones Trial Testimony (Weisberg Decl. Ex. A at OSA 001755-56); Winn Trial Testimony (Weisberg Decl. Ex. A at OSA 001861-64). |
| 7.       John Jones was the only witness who ever reported having seen the "unknown citizen" and the possible injury to one of the perpetrators. | *See* Dep. Exs. 49, 50; Weisberg Decl. ¶ 5(b). |

| FACTS | EVIDENCE |
|---|---|
| 8.      On March 31, 1994, after Detective Winn issued the medical alert, detectives received information from Arthur Jones, a security officer at Martin Luther King Hospital, about persons matching the suspect descriptions in the alert. According to Arthur Jones, an injured man arrived at the hospital on March 30, 1994 with at least one man helping him, but they left before receiving treatment. | Dep. Exs. 1, 49, 50; Winn Trial Testimony (Weisberg Decl. Ex. A at OSA 001861-64). |
| 9.      On April 28, 1994, detectives Winn and Razanskas concluded based on an anonymous tip that Obie Anthony, Reggie Cole, and a third person named Michael Miller should be suspects in the Gonzales shooting. | Dep. Exs. 1, 49, 50. |
| 10.     On May 3, 1994, detectives Winn and Razanskas showed six-packs to John Jones and his common law wife Carol Canty. John Jones identified Obie Anthony and Reggie Cole from the six-packs. Carol Canty identified a filler from the six-pack that contained Mr. Anthony's photograph, saying that the filler matched one of the perpetrators 70%. | Dep. Exs. 32-34, 50. |

| FACTS | EVIDENCE |
|---|---|
| 11.    On June 24, 1994, the detectives showed six-packs to Arthur Jones and one or more other employees of Martin Luther King hospital. Arthur Jones stated that "number one [the photo of Mr. Anthony] is the one who *come close to* look[ing] like the subject, who came [to] MLK hospital for medical treatment to left leg." (Dep. Ex. 35) Arthur Jones also identified a filler, stating that "number one [the photo of a filler in the six-pack containing Mr. Cole's photograph] *looks like* [the] subject who was carrying the other subject in to the MLK hospital. . . ." (Dep. Ex. 36) At trial, Arthur Jones testified (contrary to his initial identification) that Mr. Anthony was not the injured person, but was rather the person who was helping the injured person. None of the other MLK eyewitnesses identified Mr. Anthony or Mr. Cole. Also on June 24, 1994, the detectives showed six-packs to the surviving victims, Victor Trejo and Luis Jimenez. Mr. Jimenez did not identify Mr. Anthony or Mr. Cole. In reference to Mr. Anthony's photograph, Mr. Trejo stated: "he *looks like* the one who opened the car door and shot me and Luis." | Dep. Exs. 35-37, 49, 50; Winn Trial Testimony (Weisberg Decl. Ex. A at OSA 001925-27); Arthur Jones Trial Testimony (Weisberg Decl. Ex. A at OSA 001806-14; OSA 001830-33). |
| 12.    On August 11, 1994, live lineups were conducted. John Jones identified Obie Anthony and Reggie Cole. Luis Jimenez identified no one. Victor Trejo did not identify Obie Anthony or Reggie Cole, but did positively identify a filler. Trejo later testified at the preliminary hearing that he was certain that the filler was one of the perpetrators. Arthur Jones identified Reggie Cole and stated: "Number three [Obie Anthony] *look[s] like* suspect. . ." | Weisberg Decl. ¶ 5(d) (referencing live lineup statements by witnesses, OSA 000244-50, OSA 009984-85, OSA 009999); *Id.* ¶ 5(g) (excerpting Trejo preliminary hearing testimony, OSA 001275). |
| 13.    In November and December 1994, John Jones told Detective Winn that he had received threats. | Dep. Ex. 1. |

| FACTS | EVIDENCE |
|---|---|
| 14.    The building on the north east corner of 49th Street and Figueroa, 4826 S. Figueroa Street, was a brothel inasmuch as prostitution activity was going on inside the building. John Jones was identified by the LAPD as the owner/manager of the brothel, and the DA's Office filed pimping and pandering charges against John Jones. | Dep. Exs. 69, 70, 72, 81. |
| 15.    Following arrests for murder in 1981 (Penal Code § 187) and for keeping a disorderly house in 1985 (Penal Code § 316), John Jones nolo contendere pleas in 1983 and sustained convictions for manslaughter (Penal Code § 192.1) and pandering (Penal Code § 266(i)). Both arrests and convictions related to conduct occurring in the building at 49th and Figueroa. John Jones's manslaughter victim was a woman who was shot twice in the head. | Dep. Exs. 68, 82. |
| 16.    In 1994, John Jones had resided at the building on 49th and Figueroa for 17 years. Evidence supported the inference that he had been involved in the business of prostitution for over 20 years and had been running a sophisticated prostitution operation out of the building for 17 years. | Dep Exs. 69, 82, 83; Trial Testimony of John Jones (Weisberg Decl., Ex. A at OSA 001635-36). |
| 17.    Beginning in February 1994, LAPD vice began investigating the brothel at 49th and Figueroa. Officers entered the building in February and interviewed John Jones. The officers learned that known prostitutes lived in the building, and that the building had video cameras monitoring activity at the front door. | Dep. Exs. 69, 70. |

| FACTS | EVIDENCE |
|---|---|
| 18.     The LAPD vice investigation of 4826 S. Figueroa continued in April 1994. On April 14, 1994, officers obtained a statement from a patron of the brothel, and on April 22, 1994, officers arrested one of the prostitutes who worked out of the building. Both individuals informed the police that prostitution activity was going on inside the building. The prostitute informed the police that the owner/manager collected fees from the prostitutes/patrons and "kept a record of the number of men each prostitute brought into the building." | Dep. Exs. 69, 70. |
| 19.     On May 3, 1994, LAPD officers entered John Jones building again. While inside, they observed "numerous waiting customers as well as prostitutes in various states of undress. Several of the customers advised officers that they were at the location for sexual favors."  LAPD vice surveilled the building on May 3, 4, and 6, 2014. | Dep. Exs. 69, 70. |
| 20.     On May 26, 1994, a search warrant was executed at the brothel and John Jones was arrested on charges of pimping and pandering. These charges were included in a felony complaint filed on May 31, 1994 in *People v. Jones*, Cr. No. BA096384 (L.A. Super. Ct.). | Dep. Exs. 69, 70, 72. |
| 21.     Due to his prior convictions and the current charges, John Jones was facing mandatory prison time with a minimum sentence of six years in prison. | John Jones Trial Testimony (Weisberg Decl. Ex. A at OSA 001726-27, OSA 001730); Chun Dep. at 71-72. |
| 22.     Jones spent 10 days in custody before bailing out. After he was arrested, John Jones called Detective Winn and asked for help. According to their later testimony, Detective Winn told John Jones that she couldn't help him. | Dep. Ex. 79; John Jones Trial Testimony (Weisberg Decl. Ex. A at OSA 001668, OSA 001689-90); Winn Trial Testimony (Weisberg Decl. Ex. A at OSA 001880). |
| 23.     The DA's first offer to John Jones on his criminal charges was six years in prison. This offer was memorialized in the DA file for the John Jones case. | Dep. Ex. 73; Chun Dep. at 22, 52, 122-23. |

| FACTS | EVIDENCE |
|---|---|
| 24.    On July 21, 1994, Detective Winn called the deputy district attorney handling the John Jones pimping and pandering prosecution (Kelly Chun). She informed the prosecutor that John Jones was a witness in the case against Anthony/Cole and that she wanted "to recommend leniency on [the Jones pimping and pandering case]." This telephone call was memorialized in the DA file for the John Jones case in the DA chronology notes (Dep. Ex. 73). | Dep. Ex. 73; Chun Dep. at 29-32.. |
| 25.    Between July 21, 1994 and July 25, 1994, the prosecutors on the Jones case received telephone calls from Jones's defense attorneys. In the first call, the public defender representing Jones called to inform the prosecutor that he would be declaring a conflict. In the second call, appointed defense counsel for Jones called, saying that Jones was an informant for the LAPD. These telephone calls were memorialized in the DA file for the John Jones case in the DA chronology notes (Dep. Ex. 73). | Dep. Ex. 73; Chun Dep. at 40-44.. |
| 26.    On August 17, August 26, and September 21, 1994, Jones's appointed defense attorney had at least three telephone calls with the Jones prosecutors. Each of the three telephone calls addressed John Jones's cooperation with the LAPD and the letters to be obtained by the LAPD in support of leniency. These telephone calls were memorialized in the DA file for the John Jones case in the DA chronology notes (Dep. Ex. 73). | Dep. Ex. 73; Chun Dep. at 47-54. |
| 27.    On September 8, 1994, a letter written by Detective Winn requesting leniency for John Jones (Dep. Ex. 74) was sent to the DA's Office. | Dep. Ex. 74; Chun Dep. at 119-122. |
| 28.    On October 12, 1994 a second LAPD letter was sent to the DA's Office, informing the Jones prosecutor that 77th Street Vice (the unit that investigated the Jones pimping and pandering case) would not oppose leniency (Dep. Ex. 75). | Dep. Ex. 75; Chun Dep. at 128-30. |

| FACTS | EVIDENCE |
|---|---|
| 29.     Between May 31, 1994 and October 24, 1994, the preliminary hearing in *People v. Jones*, Cr. No. BA096384 was continued several times. | Chun Dep. at 57; Weisberg Decl. ¶ 5(e) (referencing *People v. Jones* minute orders, CITY 008824-30) |
| 30.     On October 21, 1994, the DA supervisor on the Jones prosecution approved a plea for John Jones for a one year county jail lid. This decision was memorialized in the DA file for the John Jones case in the DA chronology notes (Dep. Ex. 73). | Dep. Ex. 73; Chun Dep. at 55-57. |
| 31.     On October 24, 1994, John Jones waived his preliminary hearing rights, and the case was set for further proceedings. | Dep. Ex. 76. |
| 32.     On November 8, 1994, John Jones pled guilty with the following summary given by the court: "My understanding is, for a variety of reasons, the DA is willing to accept a plea to count one. We will put you on probation. You don't have to do any additional time, and I will require you to do certain terms and conditions of probation, including some Caltrans time." John Jones's plea was taken by Judge Tynan in Los Angeles Superior Court Department 113. | Dep. Ex. 77. |
| 33.     Case Notes by Judge Tynan in the court file for *People v. Jones*, Cr. No. BA096384 state: "Δ is a snitch in a 187. DA Wullschleger says prob[ation,] no time + Caltrans [because] of his good, if belated, citizenship." The Anthony/Cole defense was aware of the existence of this note. | Dep. Ex. 78. Trial Transcript (Weisberg Decl. Ex. A at OSA 001622). |
| 34.     John Jones appeared for sentencing on January 24, 1994 in Department 123 before Judge Reid.  At that time, he was sentenced to probation, time served, and Caltrans community service. | Dep. Ex. 79. |

| FACTS | EVIDENCE |
|---|---|
| 35.    A DA "Disposition Report" written by DA supervisor Ken Wullschleger, dated January 24, 1994, was placed in the DA file for *People v. Jones*, Cr. No. BA096384. The report documents the DA's decision to strike John Jones's prior, which otherwise would have prevented John Jones from receiving a probationary sentence. As explanation for the disposition, the report states: "The Δ has a prior 192a in 1981. In this case he was running a house of prostitution. However since his arrest he has given information and testified in 2 murder cases which resulted in the convictions of 2 people for murder. The LAPD has written letters requesting those factors to be considered in a dispo[sition] of this case. Therefore it was agreed to strike the prior and take a plea to 266f for probation." | Dep. Ex. 80; Chun Dep. at 169-76. |
| 36.    A DA "Second and Third Strike Report", dated January 24, 1994, was placed in the DA file for *People v. Jones*, Cr. No. BA096384 (Dep. Ex. 115). The report documents the DA's decision to strike John Jones's prior manslaughter conviction. | Dep. Ex. 115; Chun Dep. at 179-81. |
| 37.    On June 28, 1994, Obie Anthony and Reggie Cole were charged with murder, attempted murder, and attempted robbery in *People v. Anthony & Cole*, Cr. No. BA097736 (L.A. Super. Ct.) in relation to the shooting on March 27, 1994. | Weisberg Decl. ¶ 5(c) (referencing Felony Complaint, OSA 000691-98) |
| 38.    In *People v. Anthony & Cole*, Cr. No. BA097736 (L.A. Super. Ct.), Cole was represented by Public Defender Dick Tom. Anthony was represented by Alternate Public Defender Patrick Thomason. | Trial Transcripts (Weisberg Decl. Ex. A at OSA 001396); Weisberg Decl. ¶ 5(c). |

| FACTS | EVIDENCE |
|---|---|
| 39.    On September 12, 1994, the preliminary hearing in *People v. Anthony & Cole*, Cr. No. BA097736 (L.A. Super. Ct.) took place. John Jones, Arthur Jones, and Victor Trejo testified on behalf of the prosecution at the preliminary hearing and made identifications of Anthony and Cole. During the hearing, Anthony and Cole were wearing orange jumpsuits and were sitting at defense table. | Weisberg Decl. ¶ 5(f) (referencing Preliminary Hearing Transcript, OSA 001262,  OSA 001320, OSA 001352, 1360-61) |
| 40.    At the preliminary hearing, Victor Trejo testified that when he made the six-pack identification of Mr. Anthony he was picking a photograph that "looked like" the perpetrator and had doubt because he "couldn't remember the person very clearly" and "never got a good look at him." | Weisberg Decl. ¶ 5(g) (excerpting Preliminary Hearing Transcript, OSA 001284, OSA 001275) |
| 41.    Trial in *People v. Anthony & Cole*, Cr. No. BA097736 (L.A. Super. Ct.) began on July 13, 1995. | Weisberg Decl. ¶ 5(h) (referencing Trial Court Transcripts, OSA 001433) |
| 42.    Prior to trial, the Anthony/Cole defense attorneys received/obtained the transcripts for the November 8, 1994, and January 24, 1994 proceedings in *People v. Jones*, Cr. No. BA096384 (Dep. Exs. 77 and 79). | Trial Transcript (Weisberg Decl. Ex. A at OSA 001610-11) |
| 43.    Prior to trial, the Anthony/Cole defense attorneys received/obtained the LAPD letters requesting leniency on John Jones's behalf (Dep. Exs. 74, 75). | Trial Transcript (Weisberg Decl. Ex. A at OSA 001667) |
| 44.    At trial, the prosecution presented eyewitness identification testimony from three witnesses: John Jones, Arthur Jones, and Victor Trejo. | *See* Trial Transcript, Closing Arguments (Weisberg Decl. Ex. A at OSA 002480-567); Weisberg Decl. ¶ 5(h). |
| 45.    The defense during the criminal trial was based on mistaken identification and alibi evidence. | *See* Trial Transcript, Closing Arguments (Weisberg Decl. Ex. A at OSA 002480-567); Weisberg Decl. ¶ 5(h). |
| 46.    No physical or circumstantial evidence of any kind has ever been adduced against Plaintiffs, and none was introduced by the prosecution at trial. | *See* Trial Transcript, Closing Arguments (Weisberg Decl. Ex. A at OSA 002480-567); Weisberg Decl. ¶ 5(h). |

| FACTS | EVIDENCE |
|---|---|
| 47.    The defense believed that John Jones had received leniency in exchange for his cooperation/testimony in the case against Anthony and Cole, and sought to impeach John Jones. Using John Jones criminal history, the timeline of his 1994 pimping and pandering prosecution, the LAPD letters, and the disposition of the Jones case, the defense sought to prove, by inference, that John Jones had received a deal. | Trial Transcript (Weisberg Decl. Ex. A at OSA 001610-11, OSA 001616, OSA 001620-21, OSA 001665-68, OSA 001727-30, OSA 002526-27, OSA 002543-44); Weisberg Decl. Ex. G (Chart of Testimony) |
| 48.    During trial, the prosecution represented that John Jones had not received a deal, and tried to block cross-examination by the defense attorneys. Over and over again, when the defense tried to impeach John Jones with the available evidence of leniency, the prosecutor and the court said: "prove it." | Trial Transcript (Weisberg Decl. Ex. A at OSA 001610-11, OSA 001616, OSA 001620-21, OSA 001665-68, OSA 001727-30, OSA 002526-27, OSA 002543-44) |
| 49.    On August 1, 1995, the jury returned its verdict, convicting Obie Anthony and Reggie Cole. | Weisberg Decl. ¶ 5(i) (referencing Trial Court Transcripts, OSA 002616) |
| 50.    In November 1995, Obie Anthony and Reggie Cole were sentenced. Both were sentenced to life without the possibility of parole. | Weisberg Decl. ¶ 5(i) (referencing Trial Court Transcripts, OSA 002655) |
| 51.    Anthony and Cole appealed their convictions in *People v. Anthony & Cole*, Cr. No. BA097736. On February 2, 1997, the California Court of Appeal affirmed the convictions in an unpublished opinion. | Kaneb Decl ¶ 3 & Ex. A. |

| FACTS | EVIDENCE |
|---|---|
| 52.    In the appeal, Anthony and Cole argued that John Jones should have been precluded from testifying because he "entered a plea bargain with the prosecution in a pandering case in return for his agreement to testify for the prosecution," an agreement that they argued was in violation of the California Penal Code. In rejecting this argument, the California Court of Appeal stated: "We reject the contention, for notwithstanding the many statements made by appellants, both here and before the trial court, that Jones entered into a plea bargain in the pandering case in return for his testimony in the instant case, we find nothing in the record to support them. . . . Without question he was asked to testify, because he did so; but there is no proof he agreed to do so in exchange for a reduced charge. . . ." | Kaneb Decl. Ex. A at OSA 009868-69, OSA 009870. |
| 53.    In April 2009, Reggie Cole's conviction in *People v. Anthony & Cole*, Cr. No. BA097736 (L.A. Super. Ct.) was vacated based on an earlier finding, following an evidentiary hearing, that the conviction was unconstitutional due to ineffective assistance of counsel. The DA did not appeal, and Reggie Cole was not reprosecuted. | Kaneb Decl. ¶ 4; Weisberg Decl. ¶ 5(j) (referencing L.A. Super. Ct. Order, OSA 006849) |
| 54.    On April 7, 2010, Anthony filed a petition for writ of habeas corpus, *In re Obie Anthony*, Cr. No. BA097736 (L.A. Super. Ct.), alleging that his conviction was unconstitutional due to, *inter alia*, the suppression of exculpatory evidence, prosecutorial misconduct, false testimony, and ineffective assistance of counsel. The DA's Office represented the respondent and contested the petition. | Kaneb Decl. ¶ 7. |

| Facts | Evidence |
|---|---|
| 55.    In 2010, DA's Office produced the complete DA file for *People v. Jones*, Cr. No. BA096384 for the first time. Contained in the file were at least three documents that had not been produced previously: (1) the DA chronology notes (Dep. Ex. 73); (2) the DA Second and Third Strike Report (Dep. Ex. 115); and (3) the DA Disposition Report (Dep. Ex. 80). | Kaneb Decl. ¶¶ 5-6; Thomason Dep. at 238-54; Tom Dep. at 97-112; *see also* Castello Dep. at 234, 243. |
| 56.    The information contained in the DA chronology notes (Dep. Ex. 73), the DA Second and Third Strike Report (Dep. Ex. 115), and (3) the DA Disposition Report (Dep. Ex. 80) had not been disclosed to the defense during trial. | Kaneb Decl. ¶¶ 5-6; Thomason Dep. at 238-54; Tom Dep. at 97-112. |
| 57.    The Los Angeles Superior Court, the honorable Judge Kelvin Filer presiding, held a ten day evidentiary hearing during which thirteen live witnesses testified and more than 112 exhibits were entered into evidence. The hearing was conducted between August 30, 2011 and September 14, 2011. | Kaneb Decl. ¶ 10. |
| 58.    On September 30, 2011, the superior court granted Anthony's petition for writ of habeas corpus. Anthony's conviction in *People v. Anthony & Cole*, Cr. No. BA097736 (L.A. Super. Ct.) was vacated based on findings that it was unconstitutional due to, *inter alia*, the suppression of exculpatory evidence, prosecutorial misconduct, false testimony, and ineffective assistance of counsel. The DA did not appeal, and Anthony was not reprosecuted. | Kaneb Decl. ¶ 11 & Ex. B; Weisberg Decl. ¶ 5(k) (referencing L.A. Super. Ct. Order, OSA 006667-91) |
| 59.    In granting Mr. Anthony's habeas petition, the superior court found that the DA's Office had made a "quid pro quo" deal with John Jones that was not disclosed to the defense. The court ruled that the suppression of this information violated Mr. Anthony's rights under *Brady* and *Napue*. | Kaneb Decl. ¶ 11 & Ex. B at OSA 006678, OSA 006685-89. |

| FACTS | EVIDENCE |
|---|---|
| 60. Anthony was released from custody on October 4, 2011. By the time he was released from custody, Plaintiff Anthony had been wrongfully imprisoned for more than seventeen (17) years. | Kaneb Decl. ¶ 11. |
| 61. In February 2014, Anthony filed a motion for a finding of innocence by a preponderance of the evidence pursuant to California Penal Code § 1485.55(b) before Judge Filer. The DA's Office opposed to the motion. Following a hearing, the superior court granted the motion on May 30, 2014 and issued a finding of innocence for Anthony. The DA's Office appealed the finding and the appeal is pending. | Kaneb Decl. ¶¶ 13-14 & Ex. C. |
| 62. In/around 1994-1995, written DA policies provided that it was "[t]he policy of [the DA's] office not to offer leniency in any form solely for the purpose of obtaining testimony which may be useful in prosecuting another person for a crime." Rather, leniency would only be appropriate if "the prospective witness's testimony is essential to a successful prosecution. . ." These DA policies were not disclosed to the defense in the Anthony/Cole case. | Dep. Ex. 193; Lustig Dep. at 178-83. |

KAYE, McLANE, BEDNARSKI & LITT, LLP

DATED: Dec. 8, 2014          By:     */s/ Caitlin Weisberg*
                                            CAITLIN S. WEISBERG
                                            Attorneys for Plaintiff Obie S. Anthony, III

1   MARILYN E, BEDNARSKI (No. 105322)
2   mbednarski@kmbllaw.com
    DAVID S. McLANE (No.124952)
3   dmclane@kmbllaw.com
    CAITLIN S. WEISBERG (No. 262779)
4   cweisberg@kmbllaw.com
5   KAYE, McLANE, BEDNARSKI & LITT, LLP
    234 East Colorado Boulevard, Suite 230
6   Pasadena, California 91101
7   T: (626) 844-7660 / F: (626) 844-7670

8   Attorneys for Plaintiff OBIE STEVEN ANTHONY, III.

9                **UNITED STATES DISTRICT COURT**
10               **CENTRAL DISTRICT OF CALIFORNIA**
11

| | |
|---|---|
| 12  REGGIE D. COLE, | Case No. CV 11-03241-CBM (AJWx) |
|         Plaintiff, | [*Cole Action*] |
| 13  | |
|         v. | Case No. CV 12-01332-CBM (AJWx) |
| 14  | [*Anthony City Action*] |
|    CITY OF LOS ANGELES et al., | |
| 15  | Case No. CV 13-07224-CBM (AJWx) |
|         Defendants. | [*Anthony County Action*] |
| 16  | |
| 17  OBIE S. ANTHONY, III, | [Honorable Consuelo B. Marshall] |
| 18      Plaintiff, | |
| 19      v. | **[PROPOSED] ORDER** |
|    CITY OF LOS ANGELES et al., | |
| 20  | Date:   January 13, 2015 |
|         Defendants. | Time:   10:00 a.m. |
| 21  | Ctrm:   2 |
| 22  OBIE S. ANTHONY, III, | |
| 23      Plaintiff, | [*Notice of Motion and Motion for Partial Summary Judgment and/or Summary Adjudication of Issues; Memorandum of Points and Authorities; Separate Statement of Undisputed Material Facts; and Declarations and Exhibits filed concurrently herewith*] |
| 24      v. | |
| 25  COUNTY OF LOS ANGELES, et al., | |
| 26      Defendants. | |
| 27  | |
| 28  | |

GOOD CAUSE APPEARING, upon consideration of Plaintiff Anthony's ___, having considered all of the pleadings and evidence submitted by the parties, IT IS HEREBY ORDERED that Plaintiffs' motion is GRANTED. Based on the evidence presented, the Court finds and concludes:

(1) Undisputed facts establish that Mr. Anthony's due process rights were violated by the suppression of exculpatory impeachment information relating to a key prosecution witness named John Jones, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), and by the prosecution's use of false testimony from John Jones in violation of *Napue v. People of State of Ill.*, 360 U.S. 264 (1959) such that Plaintiff Anthony is entitled to partial summary judgment under Federal Rule of Civil Procedure 56; and/or in the alternative,

(2) The *Brady* and *Napue* violations set forth above have been previously litigated by Defendant Los Angeles County District Attorney's Office, an agency of the County of Los Angeles, resulting in a final order finding that such violations occurred. Under the doctrine of collateral estoppel, the County Defendants are precluded from contesting these issues in the instant litigation.

IT IS FURTHER ORDERED that for purposes of trial in this action, the *Brady* and *Napue* violations set forth above have been established, and the jury shall be so instructed.


IT IS SO ORDERED.


DATED: _____          _____

                                        Consuelo B. Marshal
                                        United States District Judge


Submitted By:

   */s/ Caitlin Weisberg*
   CAITLIN S. WEISBERG
   Attorney for Plaintiff Anthony